IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS MONROE, JR. and ALVINIA MONROE,<br><br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE; and GLAXOSMITHKLINE LLC,<br><br>Defendants. | Civil Action No. 2:10-cv-02140-JCJ |

## DEFENDANT GLAXOSMITHKLINE LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Plaintiffs' motion to remand reflects a pivotal misunderstanding of corporate structure and its effect on the jurisdictional analysis. To begin with, Plaintiffs, citizens of New York, sued a corporation that had already converted to a limited-liability company at the time of filing. SmithKline Beecham Corporation was then and is now GlaxoSmithKline LLC ("GSK LLC"). As a limited-liability company, GSK LLC is a citizen of any state in which its members are citizens. GSK LLC's only member is GlaxoSmithKline Holdings (Americas) Inc. ("GSK Holdings"), a Delaware corporation with its principal place of business in Delaware. GSK LLC is therefore a citizen of Delaware – not Pennsylvania – and so removal is not defeated by the resident-defendant rule set forth in 28 U.S.C. § 1441(b).

Plaintiffs argue that GSK LLC is still a citizen of Pennsylvania because its "nerve center" is allegedly there, but that misses the point. GSK LLC is not a corporation to which the "nerve center" test applies. It is a limited-liability company, and its citizenship is determined by that of

its members. Because GSK LLC's sole member, GSK Holdings, is a Delaware citizen, so too is GSK LLC.

Beyond that, Plaintiffs argue only that SmithKline Beecham Corporation is still subject to suit in Pennsylvania under a statute that subjects dissolved corporations to suit for two years. But SmithKline Beecham did not "dissolve" in the sense of Section 1979, the statute Plaintiffs cite. It "domesticated itself under the laws of another jurisdiction" as provided in Section 1980. The purpose of Section 1979 – that creditors or other plaintiffs remain able to sue the corporate entity – has no application in this instance because the Pennsylvania corporation did not in any sense "dissolve," but rather converted into a Delaware limited-liability company that can still be sued.

Under established law, GSK LLC is a Delaware citizen. The court should deny Plaintiffs' motion to remand and grant GSK LLC's unopposed motion to transfer venue to the Eastern District of New York or, alternatively, the Middle District of North Carolina.

## FACTUAL BACKGROUND

SmithKline Beecham Corporation was previously incorporated under Pennsylvania law. On October 27, 2009, SmithKline Beecham converted into a Delaware corporation and then subsequently converted into a Delaware limited-liability company. The purpose of this corporate restructuring, as explained below, was to allow for efficient movement of certain assets into a new joint venture and to allow for both the restructuring and movement of those assets without dissolution of the operating entity that has been sued in this litigation. The HIV assets that prompted the restructuring are not involved in this suit, but movement of those assets effected a change in corporate structure that impacted GSK LLC's citizenship.

In April 2009, GlaxoSmithKline plc ("GSK") and Pfizer announced a joint venture to discover, develop, and commercialize HIV/AIDS medications. Declaration of Julian Heslop

("Heslop Decl.") ¶ 5, attached as Exhibit A to GSK LLC's Response in Opposition to Plaintiff's Motion to Remand. The new joint venture, ViiV Healthcare ("ViiV"), was designed to provide particular focus and renewed emphasis on both the sale and creation of innovative HIV treatments in the United States and worldwide, in contrast to the efforts that had previously been conducted separately by GSK and Pfizer. *Id.* Formation of ViiV required the separation of GSK's HIV assets from other GSK entities. *Id.*

To accomplish the movement of assets to ViiV in the manner deemed most efficient from a corporate structure and taxation point of view, SmithKline Beecham converted from a corporation to a limited-liability company. *Id.* at ¶ 6. Absent the conversion, the transfer of the U.S. HIV business from SmithKline Beecham to ViiV would have triggered a tax of hundreds of millions of dollars. *Id.* GSK would not have established the ViiV joint venture if doing so would have resulted in such a sizable tax bill. *Id.*

Another important part of the restructuring was conversion to the LLC form without dissolution of the operating entity. Under Pennsylvania law, conversion to an LLC would have entailed a termination of the SmithKline Beecham entity and movement of assets into a newly-formed LLC entity. *See* 15 Pa. Cons. Stat. § 8956(a), (c) (allowing a Pennsylvania corporation to merge into a limited-liability company); *but see* 15 Pa. Cons. Stat. § 8959(a), (b) (the effect of such a merger is to terminate the existence of the corporation and to vest the assets of the corporation in the surviving limited-liability company). Under Delaware law, by contrast, the conversion could be done without any break in the continuity of the legal entity. *See* 6 Del. Code § 18-214. Continuity of the legal entity was deemed important for a variety of reasons, particularly having to do with avoiding (a) complex effects on many third-party agreements that contained restrictions on transfer and assignment and (b) issues related to ownership of

intellectual property rights. Heslop Decl. ¶ 10. Delaware domestication was deemed preferable for that reason. Additionally, under Delaware law, the owner/member of an LLC is considered a distinct legal entity and is not liable for the debts of the LLC. 6 Del. Code § 18-303(a). The key purposes of entity formation could thus be accomplished under a Delaware LLC structure in ways not available in Pennsylvania. On October 27, 2009, nearly six months before this lawsuit was filed, SmithKline Beecham became a Delaware corporation and then converted into a limited-liability company organized under Delaware law – GSK LLC.[1] Heslop Decl. ¶¶ 8-9.

GSK Holdings is the sole member of GSK LLC. *Id.* at ¶ 11. GSK Holdings is incorporated under Delaware law and is headquartered in Delaware. *Id.* at ¶¶ 13-14. It holds financial assets and liabilities, largely in relation to the GSK group of companies. *Id.* at ¶ 15. It has a simple structure and narrow asset management function, but is nevertheless an important entity in the overall corporate organization. *Id.* In recent years, it has owed more than $10 billion of intra-group debt, which arose as part of the restructuring required with the GlaxoWellcome and SmithKline Beecham merger in 2000, and subsequently repaid that debt. *Id.* GSK Holdings formally approves such issues as the timing and magnitude of dividend payments up the corporate chain to its shareholder. *Id.* It pays taxes, and it has litigated over its rights and obligations. *Id.* GSK Holdings does not manufacture or sell any products or services. *Id.* By contrast, GSK LLC was organized for the purpose of researching, developing, and marketing pharmaceutical products. *Id.* at ¶ 16. GSK Holdings does not conduct board-of-directors meetings in concert with any meetings of GSK LLC. *Id.*

---

[1] Because Pennsylvania law requires a corporation to terminate before forming as an LLC, SmithKline Beecham first became a Delaware corporation and then immediately converted into an LLC. Once SmithKline Beecham was a Delaware corporation, it could take advantage of Delaware law that allows a domestic corporation to convert directly into an LLC without any termination or dissolution. *See* 6 Del. Code § 18-214.

## ARGUMENT

### I. The Citizenship of GSK LLC Is Controlled by the Citizenship of GSK Holdings

Plaintiffs incorrectly assert that the location of GSK LLC's "principal place of business" determines its citizenship. Because it is an LLC, what matters is the citizenship of its members, and here, GSK LLC's only member is a Delaware corporation whose principal place of business is in Delaware. Thus, GSK LLC is a citizen of Delaware rather than Pennsylvania, and removal is not defeated by the resident-defendant rule.

An LLC is not a corporation, and the corporate citizenship test does not apply. It is well established that a non-corporate entity, like a partnership or LLC, is considered a citizen of any state in which one of its members is a citizen. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-196 (1990) (limited partnership); *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (LLC); *see* 13F Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 3630, 3630.1 (3d ed. 2009) (discussing history and application of rule and citing cases). GSK LLC has one member: GSK Holdings. Therefore, the citizenship of GSK LLC depends entirely on the citizenship of GSK Holdings.

In *Zambelli*, the Third Circuit recently clarified the distinction in the rules for determining the citizenship of an LLC. The plaintiff, a Pennsylvania citizen, asserted diversity jurisdiction on the basis that one of the defendants was "a Nevada limited liability company with its principal place of business [in Nevada]." *Id.* at 418. That defendant, however, had one member, a Louisiana LLC, and that LLC in turn had at least one member who was a Pennsylvania citizen. *Id.* at 420. Tracing citizenship back up "through the layers," the court found that the Louisiana LLC was a citizen of (among other states) Pennsylvania, and that the Nevada LLC was therefore also considered a citizen of that state. *Id.* On this basis, the court concluded that complete diversity did not exist. In doing so, it emphasized the distinction

between determining the citizenship of an LLC and the citizenship of a corporation. "Although limited liability entities resemble corporations in many respects . . . , the Supreme Court has flatly rejected arguments in favor of extending the rule of corporate citizenship to analogously formed business entities." *Id.* Instead of attempting to locate the "principal place of business" of an LLC, courts must inquire into the citizenship of the LLC's members. *Id.*; *see also Pippett v. Waterford Dev., LLC*, 166 F. Supp. 2d 233, 236 (E.D. Pa. 2001) (finding diversity jurisdiction when plaintiffs were citizens of New Jersey and Pennsylvania and defendant was an LLC whose members were Connecticut citizens).

There is no question that GSK Holdings and GSK LLC are separate business entities organized in a traditional parent-subsidiary structure and that there are legitimate and compelling business reasons for using this type of structure. Plaintiffs' suggestion that SmithKline Beecham's conversion to GSK LLC was an "effort[] at corporate maneuvering" is based on an incomplete understanding of the facts. As explained above, SmithKline Beecham converted into an LLC to facilitate the creation of a joint venture dedicated to the discovery, development, and commercialization of innovative HIV/AIDS medications. This conversion was not an attempt to manipulate diversity jurisdiction rules, but was instead done for legitimate business reasons in light of the evolving business interests of GSK. *See supra* pp. 3-4.[2]

Once it became necessary for SmithKline Beecham to convert into a limited-liability company, there were compelling reasons for completing this conversion in Delaware instead of Pennsylvania. Delaware law allows a corporation to directly convert into a limited-liability company without first terminating the corporation. *See* 6 Del. Code § 18-214. Here, the

---

[2] In addition to the reasons described on pages 3-4, there are other business reasons supporting conversion to an LLC. For example, in contrast to statutes governing corporations' by-laws, the laws of most states allow an LLC's members great flexibility in determining how the LLC will be governed by placing very few limitations, if any, on what may be included in, or excluded from, the LLC's operating agreement. *See, e.g.*, 6 Del. Code § 18-101(7).

converted business entity survived, and this avoided complex known and unknown effects on many third-party agreements that contained restrictions on transfer and assignment. Heslop Decl. ¶ 10. A direct conversion also avoided issues related to ownership of intellectual property rights. *Id.*

As a limited-liability company, GSK LLC's citizenship depends entirely on the citizenship of its sole member – GSK Holdings. In turn, GSK Holdings' citizenship is determined by the dual-citizenship rule applicable to corporations – making it a citizen of the state of its incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c). As described more fully below, GSK Holdings is incorporated in Delaware and maintains its principal place of business in Wilmington, Delaware – making both it and GSK LLC citizens of Delaware alone.

## II.   <u>GSK Holdings' Principal Place of Business Is Located in Delaware</u>

It is undisputed that GSK Holdings is incorporated in Delaware. *See* Delaware Department of State: Division of Corporations Entity Details for GlaxoSmithKline Holdings (Americas) Inc., attached as Exhibit B to GSK LLC's Response in Opposition to Plaintiff's Motion to Remand. Therefore, the only remaining question is the location of GSK Holdings' principal place of business. As the Supreme Court recently held, the "nerve center" test is now applied to determine the principal place of business of a corporation. *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

In *Hertz*, the Supreme Court resolved a circuit split regarding the appropriate test for determining a corporation's principal place of business. The Court adopted the "nerve center" test – determining a corporation's principal place of business to be "where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1192. The Court rejected other tests that focused on a corporation's general business activities, such as the place

7

of inventory, employees, or physical plants. *See id.* at 1191. Under the "nerve center" test, "[c]ourts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other." *Id.* at 1194.

GSK Holdings' directors and officers "direct, control, and coordinate" its activities from Delaware. Because GSK Holdings has a narrow asset management function, it requires relatively little operational direction, control, and coordination. Heslop Decl. ¶ 15. GSK Holdings' function does not include directing or managing GSK LLC, its pharmaceutical subsidiary. *Id.* at ¶ 16. GSK LLC is a manager-managed LLC, and its member, GSK Holdings, has elected individuals to manage the business and operations of GSK LLC. *Id.* at ¶ 12. Thus, little action is required from GSK Holdings as the sole member of GSK LLC.

GSK Holdings' Board of Directors holds quarterly meetings in Delaware. *Id.* at ¶ 22. At the quarterly meetings, the Board of Directors reviews and approves the corporate accounts, and reviews, controls, and ratifies the key business activities of GSK Holdings. *Id.* Minutes reflecting the actions of the GSK Holdings Board are stored with the corporate secretary at corporate headquarters in Wilmington, Delaware. *Id.* The administrative functions attendant to the meetings of the directors, including the keeping of minutes and other efforts of the GSK Holdings' Secretary and Assistant Secretary, are centralized in Wilmington, Delaware. *Id.* GSK Holdings' activities are controlled and coordinated through the actions and decisions of its officers and directors. *Id.* at ¶ 19. Being a holding company, those activities are relatively few and are controlled and managed primarily through review and ratification of financial accounts. *Id.* GSK Holdings' Delaware headquarters is the center of its direction, coordination, and control – its nerve center.

Plaintiffs point to GSK LLC's corporate offices in Pennsylvania and assert that the "nerve center" of its pharmaceutical business is in Pennsylvania. Mot. to Remand 5. Again, that is not the issue. The issue is the citizenship of GSK Holdings. If Plaintiffs are suggesting that the two entities are really one and the same, so that the corporate form should be disregarded for this purpose, Plaintiffs are wrong. As explained above, GSK Holdings is a separate company engaged in holding financial assets and certain obligations of the GSK group of companies. It is not engaged in manufacturing or selling any products or services. Heslop Decl. ¶ 15. GSK Holdings has a simple structure and a limited function, and, consequently, the only direction that GSK Holdings requires relates to financial and strategic decisions on its notes, loans, and investments. That direction is delivered primarily in the form of review and approval of financial accounts at the quarterly Directors meetings in Delaware. For operational activity of GSK Holdings that occurs outside of Delaware, in particular treasury, tax-planning, or other financial activities, the direction and supervision is given ultimately by personnel resident in London, not in Philadelphia. *Id.* at ¶ 22. So long as the corporate formalities are maintained, a court must base a determination of citizenship solely on the attributes of the entity in question. *See Topp v. CompAir, Inc.*, 814 F.2d 830, 835 (1st Cir. 1987) ("[S]o long as the entity's corporate form is entitled to credibility, the nerve center test looks for the localized nerve center from which the corporation in issue is directly run."). GSK Holdings is run from Delaware, not Pennsylvania.

Plaintiffs also cite unrelated court documents suggesting that GSK LLC is a Pennsylvania citizen. These documents do not change the result. The Third Circuit has recognized that statements of a corporation's principal place of business in prior pleadings "have no intrinsic capacity either to establish or disestablish jurisdiction." *Mennen Co. v. Atl. Mut. Ins. Co.*, 147

F.3d 287, 293 (3d Cir. 1998).[3] Moreover, two of the pleadings Plaintiffs cite were related to patent infringement cases, where the court's jurisdiction was based on a federal question, and so the phrase "a principal place of business" was not being used to establish diversity of citizenship, pursuant to 28 U.S.C. § 1332(c). *See* 28 U.S.C. §§ 1331, 1338. The third pleading cited by Plaintiffs in the *Woodson-Gatson* matter simply included a present-tense statement regarding the citizenship of SmithKline Beecham Corporation, the name of the entity before its conversion to GSK LLC. The substance of the statement is correct (SmithKline Beecham was a Pennsylvania corporation with its principal place of business in Pennsylvania) and in no way conflicts with the citizenship position taken in the Notice of Removal that GSK LLC filed in this case. In sum, the pleadings cited by Plaintiffs do not change any of the relevant facts showing that GSK Holdings, and therefore GSK LLC, is a Delaware citizen.

The procedure for determining corporate citizenship is clearly set out by statute and the Supreme Court's decision in *Hertz*. Plaintiffs seem to ask for a different result solely because GSK LLC – a separate corporate entity – performs publicly-visible activities in Pennsylvania. But the Supreme Court addressed this issue and held that publicly-visible activities occurring in one state will not determine the location of a corporation's principal place of business if the corporation is being directed and controlled by officers in another state. *Hertz*, 130 S. Ct. at 1194. The Court recognized that "seeming anomalies will arise" under the new test, but that we must accept them "in view of the necessity of having a clearer rule." *Id.* at 1194. That is, in adopting the "nerve center" test, the Supreme Court recognized that other tests had proven too difficult to apply, unnecessarily complicated matters, and wasted judicial resources. To the extent Plaintiffs ask this Court to analyze the entire corporate structure and various business

---

[3] Because *Mennen* was decided before *Hertz*, the court's determination of the party's principal place of business was based on the former "center of corporate activities" test, which is no longer applicable. However, the Third Circuit's evaluation of the effect of prior statements of a corporation's principal place of business was not overruled.

activities of separate GSK entities, Plaintiffs would be undermining the Supreme Court's basis for adopting a simpler test. Indeed, the inquiry must be limited to the location where GSK Holdings' activities are directed, controlled, and coordinated. *See Hertz*, 130 S .Ct. at 1192.

GSK Holdings is not engaged in manufacturing or selling products or services, and its function is limited, but it nevertheless has a genuine corporate headquarters and performs genuine and important corporate function. An untold number of other corporate families include holding companies, and there is no question that these are separate and independent corporate entities so long as the corporate formalities have been observed, and that is the case here. The "nerve center" of GSK Holdings is located in Delaware, and so, GSK Holdings has its principal place of business in Delaware, not Pennsylvania.

### III. SmithKline Beecham Corporation Was Converted into GSK LLC and Cannot Be Sued as a Dissolved Corporation

Plaintiffs rely on the Southern District of Illinois's interpretation of Pennsylvania statutes to support their claim that SmithKline Beecham can be sued as a dissolved corporation. However, this reasoning is based on a misinterpretation of Pennsylvania law and a misunderstanding of the events related to SmithKline Beecham's conversion into a Delaware limited-liability company. Therefore, the Court should decline to adopt the Illinois court's reasoning.

#### A. SmithKline Beecham Did Not Dissolve Under Pennsylvania Law

On October 27, 2009, nearly six months before this lawsuit was filed, SmithKline Beecham "domesticated itself under the laws of another jurisdiction" as allowed by Pennsylvania law. *See* 15 Pa. Cons. Stat. § 1980. In accordance with that law, SmithKline Beecham surrendered its corporate charter under the laws of Pennsylvania by filing modified articles of dissolution with the Pennsylvania Department of State. As explained in the official commentary

to Section 1980, this filing did not cause an actual dissolution, but rather simply confirmed the change in status:

> This section [1980] is intended to provide a procedure under which a domestic business corporation that has domesticated itself under the laws of another jurisdiction can clarify its status in Pennsylvania. . . . *The effect of filing under this section is not to dissolve the corporation in the ordinary sense* but simply to terminate its status as a domestic business corporation. The existence of the corporation is not affected because the same entity continues to exist in the new jurisdiction of incorporation.

15 Pa. Cons. Stat. § 1980 cmt (West 2010) (emphasis added). SmithKline Beecham's articles of dissolution noted, "SmithKline Beecham Corporation is being domesticated to Delaware and subsequently converted to a Delaware Limited Liability Company under Delaware and Pennsylvania law." *See* Excerpt from Articles of Dissolution, attached as Exhibit C to GSK LLC's Response in Opposition to Plaintiff's Motion to Remand. The certificate of formation of GSK LLC also indicates that GSK LLC "shall be a continuation of SmithKline Beecham Corporation." Heslop Decl. ¶ 9. The articles of dissolution merely terminated SmithKline Beecham's status as a domestic business corporation under Pennsylvania law, and the entity continued to exist under Delaware law.

This is distinguishable in material ways from the situation where a corporation *actually dissolves*. In an actual dissolution, a corporation ceases to exist, and its assets are distributed to the shareholders. Under the procedure SmithKline Beecham followed, however, it was only required to disclose its name and address (and those of its directors and officers), its date of incorporation, the statute under which it was incorporated, and a statement that its shareholders had approved the filing. *See* 15 Pa. Cons. Stat. § 1977(b)(1)-(4). Had SmithKline Beecham actually been "dissolving" in the sense Plaintiffs use that term, it would have been required to include all of the following information in its articles of dissolution:

- A statement that all of the liabilities of the corporation had been discharged, or that adequate provision had been made therefor;

- A statement that all of the remaining assets of the corporation would be distributed to the shareholders of the corporation;

- A statement that no actions or proceedings were pending against the corporation in any court or that adequate provisions had been made for the satisfaction of any judgment that may be obtained against the corporation; and

- A statement that notice of the winding-up proceedings of the corporation had been mailed to each known creditor and claimant of the corporation.

*See* 15 Pa. Cons. Stat. § 1977(b)(5)-(8). But because SmithKline Beecham did not dissolve, it was not required to distribute its assets to its shareholders, make provisions for its liabilities, or wind-up its affairs, and so it was not required to make such statements in its modified articles of dissolution.

The procedure was also consistent with Delaware law. The Delaware Code explains that "[u]nless otherwise agreed for all purposes of the laws of the State of Delaware or as required under applicable non-Delaware law, the converting other entity shall not be required to wind-up its affairs or pay its liabilities and distribute its assets, and <u>the conversion shall not be deemed to constitute a dissolution of such other entity</u> and shall constitute a continuation of the existence of the converting other entity in the form of a corporation of this State." 8 Del. Code § 265(f) (emphasis added).[4] Although the filing used to domesticate in another state contains some of the information required for the filing used to dissolve a corporation, a plain reading of the statute and its commentary makes it apparent that SmithKline Beecham merely "surrender[ed] its charter under the laws of [Pennsylvania]." *See* 15 Pa. Cons. Stat. § 1980. SmithKline Beecham

---

[4] Similarly, when SmithKline Beecham converted into GSK LLC under Delaware law, the conversion was "not deemed to affect any obligations or liabilities of [SmithKline Beecham] incurred prior to its conversion to a domestic limited liability company." 6 Del. Code § 18-214(e).

never dissolved – it converted into a limited-liability company and continues to exist under Delaware law.

### B. Plaintiffs' Interpretation Is Inconsistent with the Purpose of the Pennsylvania Survival Statute

Plaintiffs rely on the Southern District of Illinois's interpretation of the modified articles of dissolution to argue that SmithKline Beecham can be sued under Pennsylvania's survival statute – which is applicable only to corporations that no longer exist. Such an interpretation of the survival statute is inconsistent with its purpose. When a corporation dissolves, it distributes all of its assets to its shareholders and ceases to exist. Without a survival statute, a corporation could dissolve and distribute its assets to its shareholders to avoid its debts. Creditors of the dissolved corporation would have no way to recover.

However, when a corporation domesticates itself to another state, as SmithKline Beecham did, the corporation continues to exist under the laws of the other state. *See* 8 Del. Code § 265(g). Its liabilities and debts are preserved against the entity in the new state. *See* 8 Del. Code § 265(f) (When a non-Delaware entity converts into a Delaware corporation, "all debts, liabilities and duties of the other entity that has converted shall remain attached to the [Delaware corporation] to which such other entity has converted[] and may be enforced against it to the same extent as if said debts, liabilities and duties had originally been incurred or contracted by it in its capacity as a [Delaware corporation]."). The successor entity's responsibility for the debts and liabilities of the converted entity is not based on the survival statute.

The Southern District of Illinois misapplied Pennsylvania's survival statute. *See Alexander v. SmithKline Beecham Corp.*, No. 09-cv-1072-DRH, 2010 WL 750031 (S.D. Ill. Apr. Mar. 3, 2010). The cases that court relied on do not suggest that a corporation should be subject

to the survival statute when it merely domesticates to another state. Instead, the cases illustrate the strict procedure in place for corporations to dissolve and cease to exist. *See F.P. Woll & Co. v. Fifth & Mitchell St. Corp.*, No. Civ.A.96-CV-5973, 2001 WL 34355652, at *2 (E.D. Pa. Dec. 13, 2001) ("Pennsylvania has a <u>detailed statutory scheme</u> for voluntary corporate dissolution.") (internal citations omitted and emphasis added). The Southern District of Illinois overlooked this detailed statutory scheme and, instead, focused only on four of the eight requirements for actual corporate dissolution under 15 Pa. Cons. Stat. § 1977(b).

The purpose of the survival statute is "to set up an orderly procedure for the dissolution of a business corporation and at the same time to fix a time beyond which the shareholders need no longer concern themselves about the possibility that creditors might assert claims which could upset the dissolution and resurrect the corporation for the purpose of defending against the alleged claims." *See Am. Optical Co. v. Phila. Elec. Co.*, 228 F. Supp. 293, 295 (E.D. Pa. 1964). When a corporation does not actually dissolve, there is no question of resurrection because it continues to exist in another form. Plaintiffs' interpretation of the statute ignores its very purpose and intent. As the successor entity, GSK LLC succeeded to the liabilities of SmithKline Beecham, thus GSK LLC – not SmithKline Beecham – is the entity subject to suit.

## CONCLUSION

The citizenship of GSK LLC is determined solely by the citizenship of GSK Holdings. The Supreme Court's decision in *Hertz* and the facts of this case lead to only one conclusion – GSK Holdings has its principal place of business in Delaware, making it – and GSK LLC – citizens of Delaware alone. Complete diversity exists as between the New York plaintiffs and the Delaware defendant, and the resident-defendant rule does not defeat removal because GSK LLC is not a citizen of Pennsylvania. SmithKline Beecham did not dissolve and cannot be sued under the Pennsylvania survival statute regarding dissolved corporations. The Court should deny

Plaintiffs' motion to remand and grant GSK LLC's unopposed motion to transfer venue to the Eastern District of New York or, alternatively, the Middle District of North Carolina.

                Respectfully submitted,

/s/ Ellen Rosen Rogoff
Ellen Rosen Rogoff
Daniel T. Fitch
Leslie M. Greenspan
Pa. Attorney Nos. 43468, 53717, 91639
STRADLEY, RONON, STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
(215) 564-8000

Brian P. Johnson
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam Street, Suite 1700
Houston, TX 77002
(713) 222-2323
*Admitted Pro Hac Vice*

Madeleine McDonough
SHOOK, HARDY & BACON L.L.P.
1155 F Street, NW, Suite 200
Washington, D.C. 20004-1305
(202) 639-5600
*Admitted Pro Hac Vice*

Attorneys for Defendant, GlaxoSmithKline LLC

Dated: June 25, 2010

Of Counsel:

Timothy A. Thelen, Esquire
Assistant General Counsel
GlaxoSmithKline LLC
5 Moore Drive
Research Triangle Park, NC 27709

## **CERTIFICATE OF SERVICE**

I, Ellen Rosen Rogoff, Esquire, hereby certify that on June 25, 2010, I caused a true and correct copy of the foregoing Defendant GlaxoSmithKline LLC's Memorandum in Opposition to Plaintiff's Motion to Remand to be filed with the Court via the Electronic Court Filing system. The document is available for review and downloading on the Electronic Court Filing system and such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document on all counsel of record identified on the docket and listed below:

>Lee B. Balefsky, Esquire
>Michelle Tiger, Esquire
>KLINE & SPECTER, P.C.
>1525 Locust Street, 19th Floor
>Philadelphia, PA 19102
>
>Justin G. Witkin, Esquire
>AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
>803 North Palafox Street
>Pensacola, FL 32564
>
>*Attorneys for Plaintiff*

/s/ Ellen Rosen Rogoff
Ellen Rosen Rogoff